UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| WBSY LICENSING, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DUVAL COUNTY SCHOOL BOARD,<br><br>　　　　Defendant. | Case No.: 3:21-cv-00805 |

**PLAINTIFF WBSY LICENSING LLC'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

The Duval County School Board (the "Board")'s proffered interpretation of its lease agreement with WBSY Licensing LLC ("WBSY") (the "Lease Agreement") would make it legally impossible for WBSY to invoke the contract's purchase right, rendering that provision a nullity. Specifically, the Board claims the Lease Agreement does not give WBSY any right to purchase the Board's FCC license to use certain channels of wireless spectrum in the Jacksonville area, but only a right to purchase the channels themselves. That is legally impossible; the federal government owns, and controls the right to use, all radiofrequency spectrum in the United States in perpetuity. Private parties cannot own it, buy it, or sell it. The Board's only asset in this space— and the only thing it could have contracted to sell to WBSY—is its FCC license

to use the channels.

While the Board obviously prefers its proffered interpretation as a means of escaping its contractual obligations to WBSY, Florida law does not allow contracts to be read in this manner. *See, e.g.*, *Iglehart v. Mitbank USA, Inc.*, 285 So. 3d 331, 333 (Fla. 4th DCA 2019) ("It is unreasonable to construe the . . . agreements in a way that nullifies an express provision."); *Herian v. Se. Bank, N.A.,* 564 So. 2d 213, 214 (Fla. 4th DCA 1990) ("An interpretation of a contract which gives a reasonable, lawful and effective meaning to all of the terms is preferred to an interpretation which leaves a part unreasonable, unlawful or of no effect.").

Therefore, the only reasonable, permissible construction of the Lease Agreement—and the only one which gives full legal effect to all of its provisions and the plain intent of the parties—is that the agreement gives WBSY a right to purchase the Board's FCC license. The Board's proposed construction would, by design, eviscerate that right. The Court should reject that construction and deny the Board's motion to dismiss.

## BACKGROUND

The federal government owns and controls all wireless spectrum in the United States in perpetuity. *See* 47 U.S.C. § 301. Private entities may only possess the right to ***use*** wireless spectrum pursuant to a license issued by the FCC. *See id.* A "licensee has no ownership rights in ***a channel*** of radio

transmission or a frequency of the electromagnetic spectrum" itself and has no right "beyond the terms, conditions, and periods of the license." *In re Tracy Broad. Corp.*, 696 F.3d 1051, 1055 (10th Cir. 2012) (emphasis added); *see also In re Atl. Bus. & Cmty. Dev. Corp.*, 994 F.2d 1069, 1074 (3d Cir. 1993). An FCC license merely authorizes the use of certain radiofrequency spectrum; its sole value is in the right to use the channels it authorizes. *See In re NextWave Personal Commc'ns, Inc.,* 200 F.3d 43, 51 (2d Cir. 1999) (an FCC license "merely permits the licensee to use the portion of the spectrum covered by the license in accordance with its terms"); *In re Fugazy Exp., Inc.*, 982 F.2d 769, 772 (2d Cir. 1992) (describing license's value with respect to the rights to use wireless spectrum). License holders may buy and sell FCC licenses, and thus their concomitant rights to use radiofrequency spectrum, as long as such transactions comply with FCC regulations. *See In re Atl. Bus. & Cmty. Dev.*, 994 F.2d at 1074; *In re Tracy Broad.*, 696 F.3d at 1055.

The FCC assigns every license a "call sign," which is "[t]he combination of letters and numbers that serve to identify an FCC license." *See* "Call Sign," Glossary, Wireless Telecommunications Bureau, FCC, https://wireless2.fcc.gov/helpfiles/licenseSearch/helpGlossary.html (last visited Nov. 19, 2021); *see also* Compl. Ex. E (FCC licensing system page for the License, identifying the License by its call sign WLX922). A call sign is

effectively the name of the license. It is associated with a channel or channels only via its assignment to a license.

The Board holds an FCC license authorizing the use of certain channels of radiofrequency spectrum in the Jacksonville, Florida area (the "License"). *See* Compl. Ex. C; Ex. E. When the FCC granted the License to the Board, it assigned the License call sign WLX922. *See id.* The Board leases the right to use the channels authorized by the License to WBSY, pursuant to the Lease Agreement. *See* Compl. Ex. C §§ 5(a) ("[WBSY] will have the exclusive right to use . . . the capacity under the Channels . . . ('Clearwire Capacity')."); 3(a) (WSBY "will pay Licensee a monthly fee . . . for use of the 'Clearwire Capacity'"); *see also id.* at 1 ("[T]he Parties have agreed to enter into this Agreement for Licensee to lease to [WBSY] the capacity on the Channels[.]"). The Lease Agreement defines the Channels solely with reference to the FCC's authorization to use them: The "Channels" means "authorized EBS channels A1, A2, A3, and A4." Compl. Ex. C at 1. That authorization is manifested in the License. *See* Compl. Ex. D. The Lease Agreement defines the "License" as its FCC identifier, "call sign WLX922." Compl. Ex. C at 1. And Section 3(e) of the Lease Agreement provides that WBSY "has the right to purchase the Channels covered by the [Lease] Agreement (the 'Purchase Right')" for the sum of the remaining lease payments. Compl. Ex. C §§ 3(a), 3(e). The FCC approved the original Lease Agreement executed between the Board and

WBSY's predecessor on August 24, 2017. *See* Ex. 1 at 25 (FCC Public Notice). It also approved the assignment of the Lease Agreement to WBSY on March 20, 2020. *See* Compl. Ex. B (FCC licensing system page showing Lease Agreement grant date); Compl. Ex. A (Assignment Agreement).

In August 2020, WBSY exercised its purchase right under Section 3(e), and notified the Board that it intended to purchase the asset it was then leasing—the License, to which WBSY referred by its FCC call sign. *See* Compl. Ex. F ("Pursuant to Section 3(e)" of the Lease Agreement, WBSY "hereby gives [the Board] notice of its intent to exercise Purchase Right for call sign WLX922.").

In response to that letter, the Board never claimed that it understood Section 3(e) to refer to anything other than the License—i.e., the right to use the Channels—which is the only thing to which it possibly could refer. Instead, the Board asserted that the entire Lease Agreement was invalid because the individual who executed it on the Board's behalf was not empowered to do so. *See* Compl. ¶¶ 35-38. The Board then demanded that WBSY make a "real offer" to purchase the License—i.e., offer more money than the parties agreed to in Section 3(e). *See id.* ¶¶ 39-41. Now, for the first time, the Board claims that Section 3(e) provides only a right to purchase the Channels, which the Board does not own and cannot lawfully sell.

5

## STANDARD OF REVIEW

In deciding a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Dismissal is warranted only "where it is clear [that] the plaintiff can prove no set of facts in support of [its] claims." *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citation omitted).

A court's review on a motion to dismiss generally is limited to the complaint and its exhibits. *Gill ex rel. KCR v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019). The Court may also consider documents amenable to judicial notice under Federal Rule of Evidence 201, including "information contained on state and federal government websites." *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).

## ARGUMENT

This Court should reject the Board's proposed construction of the Lease Agreement because it is incompatible with federal law, inconsistent with the Lease Agreement as a whole, and would render the purchase right in Section 3(e) a nullity. The parties plainly did not intend such a result. By contrast, WBSY's proposed construction of Section 3(e) is consistent with federal law and would give legal effect to every provision of the Lease Agreement.

A.  **Section 3(e) of the Lease Agreement Gives WBSY a Right to Purchase the License.**

"The paramount concern in construing contracts is the intention of the parties." *Roundtree v. Smith*, 448 So. 2d 1252, 1253 (Fla. 4th DCA 1984) (citation omitted). "In determining this intent, contract provisions should be given their natural and most commonly understood meaning in light of the subject matter and circumstances." *Gibbs v. Air Canada*, 810 F.2d 1529, 1533 (11th Cir. 1987) (quoting *Baker & Co., Fla. v. Goding,* 317 So. 2d 118, 119 (Fla. 3d DCA 1975)). A court must endeavor "to give reasonable meaning and effect to all of the provisions" of the contract. *Aucilla Area Solid Waste Admin. v. Madison Cty.*, 890 So. 2d 415, 416-17 (Fla. 1st DCA 2004). In doing so, it "should consider the language in the contract, the subject matter of the contract, and the object and purpose of the contract," in accordance "with reason and probability," while "avoid[ing] an absurd construction." *Companion Prop. & Cas. Ins. Co. v. Category 5 Mgmt. Grp., LLC*, 189 So. 3d 905, 907-08 (Fla. 1st DCA 2016) (citation omitted); *see also* Restatement (Second) of Contracts § 203 (1981) ("[I]t is assumed that each term of an agreement has a reasonable rather than an unreasonable meaning, and that the agreement is intended to be lawful.").

The Board argues that "WBSY does not have the right – under the circumstances alleged – to purchase the [] License" and that WBSY "has not

7

exercised its potential right to purchase the Channels pursuant to Section 3(e) of the Lease Agreement." Dkt. 12 at 6. It also asserts that "Section 3(e) does not grant WBSY the right to purchase the 'License,' which includes call sign WLX922 and any rights beyond those channels A1, A2, A3, and A4." Dkt. 12 at 5.

The Board's argument contravenes bedrock principles of contract construction because it construes the Lease Agreement to render Section 3(e) illegal and a nullity. *See Iglehart*, 285 So. 3d at 333 ("It is unreasonable to construe the . . . agreements in a way that nullifies an express provision."); *Morrison v. Morrison*, 247 So. 3d 604, 608 (Fla. 2d DCA 2018) ("[A]n interpretation that leads to an absurd result or that nullifies other provisions of the contract should be avoided"); *Premier Ins. Co. v. Adams*, 632 So. 2d 1054, 1057 (Fla. 5th DCA 1994) ("[A]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless." (citation omitted)); *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 969 (5th Cir. 1976) (rejecting construction of a contract that would render a related agreement "a nullity"). Because "the Channels"—like all channels of radiofrequency spectrum—are simply FCC-defined segments of spectrum controlled in perpetuity by the federal government, the only right to the Channels that any private party can possess is a right to use them pursuant to an FCC license. *See* 47 U.S.C. § 301. The Board therefore cannot

have contracted to give WBSY a right to purchase *the Channels*, i.e., the spectrum itself; it could only contract to sell *the License* authorizing the use of the Channels. *See In re Tracy Broad. Corp.*, 696 F.3d at 1055, 1058 ("[A] licensee has no ownership rights in a channel of radio transmission," but the Communications Act "certainly contemplates that licenses can be sold" and "does not prohibit a licensee from making money from its license—say, when a licensee sells a license."); *In re NextWave Personal Commc'ns, Inc.,* 200 F.3d at 50-51.

The Board also incorrectly suggests that the License has some value apart from the right it confers to use the Channels. The License does not "*include* call sign WLX922" or confer "any rights *beyond*" the right to use channels A1, A2, A3, and A4, as the Board suggests. Dkt. 12 at 5. The call sign WLX922 is merely an identifier that the FCC assigned to the License. *See* "Call Sign," Glossary, Wireless Telecommunications Bureau, FCC; Compl. Ex. E. It is necessitated by FCC regulation and assigned by happenstance. It has no value of its own. And, as discussed, the License simply confers the right to use the specified channels, nothing more.

The Board's construction of Section 3(e) is also inconsistent with the context and purpose of the Lease Agreement. Under that agreement, WBSY leases from the Board *the right to use* the Channels, as manifested in the License. Compl. Ex. C §§ 5(a) ("[WBSY] will have the exclusive *right to use*

9

. . . *the capacity under the Channels* . . . ('Clearwire Capacity')."); 3(a) (WSBY "will pay Licensee a monthly fee . . . *for use of the 'Clearwire Capacity'*"); *see also id.* at 1 ("[T]he Parties have agreed to enter into this Agreement for Licensee to lease to [WBSY] *the capacity on the Channels*[.]"). To reiterate, that is the only asset covered by the Lease Agreement and the only asset that the Board has to lease (or sell) in this space. Accordingly, the Lease Agreement defines the Channels solely with reference to the FCC's authorization of the right to use them: "the Channels" means "authorized EBS channels A1, A2, A3, and A4." Compl. Ex. C at 1. That authorization is manifested in the License. *See* Compl. Ex. D. And the Lease Agreement defines "License" as its FCC identifier, "call sign WLX922." *See* Compl. Ex. C at 1. Section 3(e) also sets the purchase price as WBSY's remaining monthly lease payments for the right to use the Channels. Compl. Ex. C §§ 3(a), 3(e).

The FCC reviewed and accepted the Lease Agreement, including Section 3(e), in both 2017, when it was executed between the Board and WBSY's predecessor, *see* Ex. 1, and again in 2020, when it was assigned to WBSY, *see* Compl. Ex. B. The FCC would not have twice approved the Lease Agreement if it contained a purchase right which facially conflicts with federal law.

At bottom, the Board is asking this Court to ignore the law, the entire structure of radiofrequency spectrum use rights, and the remainder of the

Lease Agreement in construing the purchase option to refer to the channels themselves, rather than the right to use the channels, as manifested in the License. *See Aberdeen Golf & Country Club v. Bliss Const., Inc.*, 932 So. 2d 235, 236 (Fla. 4th DCA 2005) ("[A] contract must be construed and understood in light of its whole text, context, structure and purpose."); *see also Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1367–68 (11th Cir. 2018) (citation omitted) (courts do not construe contract terms "in a vacuum").

In contrast, WBSY's contention that Section 3(e) gives it the right to purchase the License best reflects the parties' intent because it rests on a construction of the Lease Agreement which is consistent with federal law, the overall purpose of the Lease Agreement, and the requirement that the Court "give reasonable meaning and effect to all of the provisions" of the contract. *See Super Cars of Miami, LLC v. Webster*, 300 So. 3d 752, 755 (Fla. 3d DCA 2020) (citation omitted). Construing the Lease Agreement "in light of the subject matter and circumstances," *Air Canada*, 810 F.2d at 1533, WBSY's right to purchase "the Channels" under Section 3(e) can only refer to the right to purchase the License—the FCC-created property interest giving its holder the right to use the Channels. That is the only asset the Board could lawfully sell, and that WBSY could lawfully buy, with respect to the spectrum covered by the Lease Agreement.

In August 2020, WBSY validly exercised that right. *See* Compl. Ex. F ("Pursuant to Section 3(e)" of the Lease Agreement, WBSY "hereby gives Licensee notice of its intent to exercise Purchase Right for call sign WLX922."). The Board, for the stated reason of demanding a price higher than the one to which it agreed in the Lease Agreement, has refused to comply with its obligation to sell the License, in direct breach of that agreement.

**B.  At Most, the Board Identifies an Ambiguity in the Lease Agreement Which Does Not Justify Dismissal.**

Even if the Court were to find the Board's argument plausible, the motion to dismiss should be denied because, at most, the Board has identified an ambiguity in the Lease Agreement. A contract is ambiguous "when it is of uncertain meaning, and may be fairly understood in more ways than one." *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1002 (Fla. 2d DCA 1995) (citation omitted). "In the event of such an ambiguity, a trial court is authorized to admit parol evidence to explain the words used and how the contracting parties intended them to be interpreted." *Id.*[1]

---

[1] An ambiguity can be either patent or latent. *See Nationstar Mortg. Co. v. Levine*, 216 So. 3d 711, 715 (Fla. 4th DCA 2017). "A patent ambiguity is intrinsically apparent on the face of the document." *Id.* A latent ambiguity "arises when the language in a contract is clear and intelligible, but some extrinsic fact or extraneous evidence creates a need for interpretation or a choice between two or more possible meanings." *Id.* (citation omitted).

12

The Board's supposed distinction between the terms "the License" and "the Channels" would—at very most—reveal an ambiguity, which would necessitate the introduction of extrinsic evidence to determine the parties' intent. Such an ambiguity cannot be resolved on a motion to dismiss.

## CONCLUSION

For all of these reasons, WBSY respectfully requests that the Board's motion to dismiss be denied.[2]

---

[2] Although WBSY does not now seek the affirmative relief of leave to amend its Complaint, if the Court is inclined to grant the Board's motion, WBSY respectfully requests that it do so without prejudice to allow WBSY to allege additional facts.

Dated: December 3, 2021

        Respectfully submitted,

        /s/ *Kenneth J. Brown*
        WILLIAMS & CONNOLLY LLP
        Kenneth J. Brown
        Jessica Bodger Rydstrom
        Denis R. Hurley
        725 Twelfth Street, N.W.
        Washington, DC 20005
        Telephone: (202) 434-5000
        Facsimile: (202) 434-5029
        *kbrown@wc.com*
        *jrydstrom@wc.com*
        *dhurley@wc.com*

        ABEL BEAN LAW, P.A.
        Michael A. Abel, Esq.
        Florida Bar No. 0075078
        Jared J. Burns
        Florida Bar No. 1003415
        100 North Laura Street, Suite 501
        Jacksonville, Florida 32202
        Telephone: (904) 944-4100
        *mabel@abelbeanlaw.com*
        *jburns@abelbeanlaw.com*

        *Attorneys for WBSY Licensing LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 3, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Jared J. Burns*
Attorney